(C. D. 843)

TI HANG LUNG & CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 7, 1944)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before Cline, Keefe, and Ekwall, Judges; Cline, J., concurring

Ekwall, Judge: Merchandise invoiced and entered as "Pak Nor Mi" was imported at the port of San Francisco, Calif., and classified and assessed with duty by the collector of customs at that port as rice wine or similar beverage, at the rate of $1.25 per gallon, under paragraph 804 of the Tariff Act of 1930, plus an internal revenue tax of $4 per proof gallon or wine gallon if below proof, as distilled spirits, under U. S. Code, Title 26, Section 2800 (a) (1), as amended by section 213 of the Revenue Act of 1940, and section 533 (a) of the Revenue Act of 1941. The commodity was entered for warehouse on December 2, 1941, and the entry liquidated June 16, 1942.

The correctness of the assessment of duty under the tariff act is not disputed by the plaintiff but protest is made against the imposition of the internal revenue tax, on the ground that the merchandise is neither wine nor distilled spirits.

The applicable provisions of the Internal Revenue Code, as amended by section 533 (a) of the Revenue Act of 1941, are as follows:

Sec. 2800. Tax—(a) Rate—(1) Distilled spirits generally.

There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $4 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. (USC 1940 ed. Title 26, p. 2298.)

In *Columbia Co.* v. *United States*, 5 Cust. Ct. 175, C. D. 395, this court held that certain "Pak Nor," a Chinese wine made from rice by a process of fermentation, specifically provided for as rice wine in paragraph 804 of the Tariff Act of 1930 at the rate of $1.25 per gallon, was not subject, in addition to such rate, to the assessment of an internal revenue tax at the rate of $2.25 per gallon as distilled spirits. The testimony in the present case establishes that the wine here involved is of the same character and description as that which was the subject of our decision in the *Columbia Co.* case, *supra*, containing less than 24 per centum of alcohol, and by agreement of the parties and order of the court, the record in the earlier case was incorporated in and made part of the record in the instant case. We therefore have here the precise question which was decided in favor of the importer in the earlier case and that question involves the internal revenue tax only.

The plaintiff herein has filed a short brief calling attention to the state of the record and to the previous decision on Pak Nor, and asking that said decision be followed. The Assistant Attorney General has filed a more elaborate brief, well written and well argued, quoting from and discussing the new section, 528, added to the Tariff Act of 1930 as section 20 of the Customs Administrative Act of 1938 (52 Stat. 1077), and urging also that the recent decision reported as *De Fremery & Co.*

v. *United States*, 31 C. C. P. A. (Customs) 83, C. A. D. 253, requires a conclusion the reverse of that arrived at in the *Columbia Co.* case, *supra*, in respect to the internal revenue tax. For convenience of reference, said section 528 is set forth herewith.

SEC. 528. TAXES NOT TO BE CONSTRUED AS DUTIES.

No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws. Nothing in this section shall be construed to limit or restrict the jurisdiction of the United States Customs Court or the United States Court of Customs and Patent Appeals.

The Government suggests in its brief the effect of this amendment to the law. We quote:

Under this section of the law, internal revenue taxes which are not in themselves designated as customs duties but which were formerly considered duties under the decisions of this and other courts (See *Brown* v. *Maryland* (1827), 12 Wheat. 419; *Shaw & Co.* v. *United States* (1922), 11 Ct. Cust. Appls. 226, T. D. 38990; *Faber, Coe & Gregg, Inc.* v. *United States* (1931), 19 C. C. P. A. (Customs) 8, T. D. 44851) are no longer to be considered as duties "for the purpose of any statute relating to the customs revenue," but are exactions (within the jurisdiction of the Secretary of the Treasury) which are protestable under section 514 of the Tariff Act of 1930.

This particular point was not raised in the prior case.

The claim strongly urged by the Government, a claim going to the merits of the case, is that the commodity in suit is taxable under the internal revenue laws as distilled spirits. It seems justified by the decision in the *De Fremery* case, *supra*. Before taking up that particular phase of the case, some informative points should be presented.

For that purpose only we resort to the tariff history of "rice wine or sake" as showing just what the article is. Before it received specific mention in the tariff law it had been variously classified as similar to still wine, as similar to beer, and as a nonenumerated article. The litigation was reviewed at length in the volume "Notes on Tariff Revision, 1908," prepared for the use of the Committee on Ways and Means in drafting the bill which eventually became the Tariff Act of 1909. After reviewing the litigation the compiler of that volume suggested the insertion of a provision for rice wine or sake (see pp. 364, 365). This suggestion was adopted in substantially the form in which it was offered. A briefer review of the litigation will be found in vol. 1, Digest of Customs and Related Laws and of Decisions Thereunder, 1935, at p. 492. From this the inference is inevitable that rice wine, so-called, is not truly a wine at all. It is not included in dictionary definitions of wine.

More important still, in the determination of the instant case, it is not wine within the meaning of the internal revenue laws. Section 1310, title 26, USC 1934 edition, p. 1166, limits "natural wine" to

that derived from the juice of the grape, and this section and definition are carried into the Internal Revenue Code as section 3044 (USC 1940 edition, p. 2340). Section 3045 of said Internal Revenue Code, on the same page, extends the provisions of the internal revenue laws applicable to natural wine to certain fruit wines therein named, none of which is rice wine. There is no "similitude clause" or "non-enumerated clause" in the internal revenue statutes, therefore rice wine is not subject to tax as wine. This circumstance does not, however, necessarily relieve it from internal revenue tax. The cassis, green menthe, and cherry cordial involved in the *De Fremery* case, *supra*, were not mentioned in the internal revenue statutes but they were held taxable thereunder, by virtue of the definition of distilled spirits contained in R. S. 3248. At the time of the importation here in suit, section 2809 of the Internal Revenue Code (Title 26, USC 1940 edition) had become effective, and subdivision (b) thereof defines distilled spirits in precisely the same wording as R. S. 3248, viz:

SEC. 2809. DEFINITIONS * * *.
(b) *Distilled spirits—(1) General definition.*
Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance.

The process by which the commodity now before us is produced is described in full in the *Columbia Co.* case, *supra*, and need not here be again described in detail. Sufficient to say that after the fermentation process is completed a liquor distilled from fermented rice is added. It seems to the court that under the rule announced in the *De Fremery* case, *supra*, this step brings the finished product within the definition of distilled spirits, specifically within that portion reading "including all dilutions and mixtures of this substance," that is, the substance produced by the fermentation of grain (rice). Following this authority we hold that the imposition of internal revenue tax at the rate of $4 per gallon on the rice wine in suit was in accordance with the law. Plaintiff's claim that the commodity is not subject to the imposition of the internal revenue tax is therefore overruled.

It may be proper to add that this ruling does not affect those wines that are specifically provided for as wines in the Internal Revenue Code.

Judgment will be rendered for the defendant.

### CONCURRING OPINION

CLINE, J. I concur with the majority in this case holding that the merchandise is dutiable at the rates assessed by the collector and that the protest should be overruled, but I do not agree with statements in a quotation from defendant's brief in the decision with respect to

the meaning and application of section 528 of section 20 of the Customs Administrative Act of 1938. The defendant states that internal revenue taxes which are not in themselves designated as customs duties "are no longer to be considered as duties 'for the purpose of any statute relating to the customs revenue,' but are exactions (within the jurisdiction of the Secretary of the Treasury) which are protestable under section 514 of the Tariff Act of 1930." I believe that further consideration should be given to that contention.

In *Dunbar Molasses Co. et al.* v. *United States*, 58 Treas. Dec. 634, T. D. 44389, and in *Adele Forwarding Co.* v. *United States*, 62 Treas. Dec. 923, Abstract 21680, the court held that protests against exactions of the collector, other than duties, should be filed within 60 days after decision and payment thereof, under section 514 of the Tariff Act of 1922, rather than within 60 days after liquidation of the entry. In those cases the protests which were filed within 60 days after liquidation were dismissed as untimely. Although section 514 of the Tariff Act of 1922 was amended somewhat when section 514 of the Tariff Act of 1930 was enacted, the limitations as to the time of filing protests were not substantially changed. Therefore, if the assessment of the internal revenue taxes should be considered as exactions, as stated by the defendant, a protest against such taxes filed within 60 days after liquidation but not within 60 days after decision and payment of the tax would be untimely. It becomes important, therefore, to determine whether internal revenue taxes are exactions.

The word "exaction" is defined in Bouvier's Law Dictionary as follows:

*exaction.* A wilful wrong done by an officer, or by one who, under color of his office, takes more fee or pay for his services than the law allows.

Between *extortion* and *exaction* there is this difference: that in the former case the officer extorts more than his due, when something is due to him; in the latter, he exacts what is not his due, when there is nothing due to him. * * *.

The word is defined in Corpus Juris, Secundum, Vol. 32, page 1146, as follows:

*exaction.* The act of demanding and receiving; and, more specifically, the wrongful act of an officer or other person in compelling payment of a fee or reward for his services, under color of authority, where no payment is due.

In customs cases, the courts have treated as exactions, other than duties, payments made to the collector for different purposes, such as fees on packed packages (*United States* v. *American Express Co.*, 154 Fed. 996, T. D. 28285), inspection charges (*Dunbar Molasses Co.* v. *United States, supra*) and cartage charges (*Adele Forwarding Co.* v. *United States, supra*).

We have been unable to find any authority holding that internal revenue taxes on imports are exactions. In fact, the courts have held that they are duties and thus come under the jurisdiction of the customs courts. In *F. H. Shallus & Co.* v. *United States*, 35 Treas.

Dec. 394, Abstract 42718, the Board of United States General Appraisers (now the United States Customs Court) dismissed a protest against the assessment of an internal revenue tax on liquor classified under section 300 of the War Revenue Act of 1917, saying—

It is very clear to us that this board has no jurisdiction to hear appeals from the action of the collector of customs or any other official who exacts a payment as an internal-revenue tax. Therefore, declining to pass upon the merits of the case, we feel constrained to dismiss the appeal, and it is so ordered.

Although the case was apparently decided adversely to the importer's contention, the Government filed an appeal with the United States Court of Customs Appeals. In reversing the decision below, in *United States* v. *Shallus & Co.*, 9 Ct. Cust. Appls. 168, T. D. 37999, the court said:

The protest was overruled by the collector and on appeal the Board of General Appraisers, of its own motion, the issue not having been tendered by the parties, held the assessment an exaction of an internal revenue tax and that the board was without jurisdiction to hear such appeals, notwithstanding the decision as to the inurement of the claimed revenue was made by a collector of customs. Appeal therefrom was taken by the Government. The importers do not appear in this court.

\* \* \* \* \* \* \*

That this is a tax on imports can not be questioned. Brown *v.* Maryland (12 Wheat., 419); May *v.* New Orleans (178 U. S., 496, 507).

Stress seems to have been laid by the board upon the fact that the word "tax" was employed in place of the word "duties," in section 300, but the word "tax" is often used interchangeably with the word "duties," and when provision for a tax on an import is made it unquestionably provides for a duty. The definition of a duty is "a tax on imposts; excise or customs dues." So it may be well said, therefore, that when the tax is imposed upon an importation, while it is still in customs custody, the purpose is to be inferred that it is intended as duties on imports.

See also *Shaw & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 226, T. D. 38990.

The customs courts have considered many cases involving the assessment on imports of internal revenue taxes by the collector of customs. No cases have come to my attention where the courts considered that jurisdiction depended on the question of whether or not the assessments were exactions. Such a tax would not come within the definitions of exaction, above-quoted, and I do not believe that the assessment was an exaction.

Section 528 of section 20 of the Customs Administrative Act of 1938 reads as follows:

SEC. 528. TAXES NOT TO BE CONSTRUED AS DUTIES.

No tax or other charge imposed by or pursuant to any law of the United States shall be construed to be a customs duty for the purpose of any statute relating to the customs revenue, unless the law imposing such tax or charge designates it as a customs duty or contains a provision to the effect that it shall be treated as a duty imposed under the customs laws. Nothing in this section shall be con-

strued to limit or restrict the jurisdiction of the United States Customs Court or the United States Court of Customs and Patent Appeals.

Although the jurisdiction of the customs courts' arises from the fact that internal revenue taxes imposed by the collector of customs on imports are duties, it is evident that section 528, above-quoted, was not intended to deprive the courts of jurisdiction in such cases. The last sentence in the provision amply supports that view.

The defendant's brief contains excerpts from the hearings and documents before the Committees of Congress explaining the intended meaning of the provision, which was evidently proposed by the Treasury Department. It appears that representatives of the Treasury Department stated to the committee that the section will preclude any court or administrative officer from holding that provisions of law, particularly exemptions and preferences applying to duties, are applicable also to internal revenue taxes accruing on imports. The witnesses explained that the exemptions and preferences referred to were intended to apply to such preferences as are found in the Cuban Trade Agreement and would limit the 20 per centum preferential provided for in that agreement to duties as distinguished from internal revenue taxes. If such is the only intent of the provision, it would seem that the section is merely an approval of judicial decisions, because it was held in *Faber, Coe & Gregg (Inc.)* v. *United States*, 19 C. C. P. A. (Customs) 8, T. D. 44851, and in *Faber, Coe & Gregg, Inc.* v. *United States*, 26 C. C. P. A. (Customs) 95, T. D. 49638, that the preferential rates in the Cuban treaty of December 11, 1902, and in the Cuban Trade Agreement of August 24, 1934, were not applicable to internal revenue taxes on cigars.

I am of the opinion that section 528 of section 20 of the Customs Administrative Act of 1938 makes no change in the court's jurisdiction or practice in passing on the legality of the assessments of internal revenue taxes on imported merchandise.