## ATLANTIC TRANSPORT CO. *v.* UNITED STATES (No. 1337).[1]

1. JURISDICTION.

   The court may at any stage raise the question of jurisdiction of the subject matter, and the determination of the trial court that it has jurisdiction adds nothing to the force of its judgment.

2. BOARD'S JURISDICTION UNDER SUBSECTION 14 OF SECTION 28, ACT OF 1909.

   The appellant was required to pay for the services of inspectors who supervised the loading of a vessel at night and on Sundays and holidays. Subsection 14 of section 28, tariff act of 1909, was not intended to confer jurisdiction upon the board in any cases other than those related to duties or charges on imported goods, and the charges here could not be reviewed.—Czarnecki's case, G. A. 3785 (T. D. 17851).

3. DRAWBACKS AND THE SECRETARY OF THE TREASURY.

   The jurisdiction to allow or refuse drawbacks is vested in the Secretary of the Treasury, and it would seem incongruous to vest in another tribunal the decision of questions relating to the charges connected with the exportation of drawback goods, which in effect result in a reduction of the allowance of drawback.

United States Court of Customs Appeals, October 29, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7513 (T. D. 33979) and Abstract 34480 (T. D. 34069).

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* on the brief) for appellant.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *William A. Robertson*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This protest is against the action of the collector in requiring protestants to pay for the services of inspectors while supervising the loading of a vessel at night and on Sundays and holidays. The vessel was being laden with goods upon which a drawback was claimed. The protest was overruled, and the protestants appeal. Before the hearing, counsel for the Government entered a motion to dismiss the proceedings for want of jurisdiction. This motion was overruled, and the case proceeded to final decision as above stated.

In this court Government's counsel reasserts the claim that the board is not given jurisdiction of this class of cases. It is suggested on behalf of the protestants that as there was no appeal from the order overruling the motion to dismiss, the question is now foreclosed. It would seem, however, that the court may at any stage raise the question of jurisdiction of the subject matter, and should do so, and that the determination of the trial court that it has jurisdiction adds nothing to the force of its judgment. See Brown on Jurisdiction (second edition, sec. 26, at pp. 131 and 132), where it is said:

If the court lacks jurisdiction over the subject matter of the controversy, all the authorities agree that the judgment is void, however honestly it may believe it is

acting rightfully, whatever may be the recitals of its record, however formal may be its acts, or however judicious its conclusions. If it lacked power to perform the judicial act it undertook, its findings that it had jurisdiction adds nothing to the verity of its pretended judgment. Its power was usurped, and its finding that it possessed the power in no way confers it.

See also Railroad Co. *v.* Swan (111 U. S., 379, at pp. 382 and 383).

Furthermore, the decision of the motion was interlocutory and no appeal could have been taken therefrom. Brady *v.* Railroad Co. (73 Mich., 457).

The question of jurisdiction therefore stands for decision, and the question, stated briefly, is whether subsection 14 of section 28 of the act of 1909, corresponding to section 14 of the customs administrative act of 1890, was intended to confer jurisdiction upon the board in any cases other than those relating to duties or charges on imported goods.

In the decision of this question, consideration should be given to the fact that importation is complete before any action to secure a drawback becomes necessary, and that the jurisdiction to allow or refuse drawbacks is vested in the Secretary of the Treasury; hence there would be a seeming incongruity in vesting in another tribunal the decision of questions relating to the charges connected with the exportation of drawback goods, which in effect result in a reduction of the allowance of drawback. If the statute confers such jurisdiction, the seeming incongruity would not of course be an obstacle to its enforcement, but the circumstance throws a sidelight on the question.

Another significant fact is that the appeals to this court authorized by subsection 29 of section 28 of the act of 1909 were obviously intended to cover the same class of cases as were brought within the jurisdiction of the board by subsection 14. These two subsections should be construed together and are intended to outline the cases in which the judicial action by the board and of this court was authorized. If this be not so—that is, if it be held that it was the intention of Congress to vest the board with jurisdiction in a class of cases not made appealable to this court—this conclusion would be fatal to the appellants in this case for want of jurisdiction of this court to review the board's decision. We think, however, that no purpose on the part of Congress to vest a jurisdiction in the board over cases not reviewable by this court (except in appraisements) can be found if the terms of the act as a whole be considered.

The pertinent provisions are as follows:

SEC. 14. That the decision of the collector as to the rate and amount of duties *chargeable upon imported merchandise*, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within fifteen days after but not before

such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, *and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon.* Upon such notice and payment the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers, for due assignment and determination as hereinbefore provided; such determination shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such, who shall liquidate the entry accordingly, except in cases where an application shall be filed in the United States Court of Customs Appeals within the time and in the manner provided for in this Act.

SEC. 29. The Court of Customs Appeals established by this Act shall exercise exclusive appellate jurisdiction to review by appeal, as provided by this Act, final decisions by a board of general appraisers in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classification, and the fees and charges *connected therewith,* and all appealable questions as to the jurisdiction of said board, and all appealable questions as to the laws and regulations governing the collection of the customs revenues; and the judgment or decrees of said Court of Customs Appeals shall be final in all such cases.   *   *   *   Said Court of Customs Appeals shall have power to review any decision or matter within its jurisdiction and may affirm, modify, or reverse the same and remand the case with such orders as may seem to it proper in the premises, which shall be executed accordingly.

It will be noted that the jurisdiction conferred upon this court is to review final decisions by a board in all cases as to construction of the law and facts respecting the classification of merchandise and the rate of duty imposed thereon and the fees and charges *connected therewith.* This would seem to be clear, and it would appear that without extending unwarrantably the terms of the statute conferring jurisdiction the court could not take jurisdiction of a case involving fees and charges in no way connected with the importation of merchandise or the steps taken toward a proper classification. The later provision above quoted in no way enlarges the class of cases in which jurisdiction is given.

Turning to subsection 14, we find that while the intent is not so clearly expressed as in subsection 29, yet the purpose to restrict the jurisdiction as to fees and exactions to such fees and exactions as relate to imported merchandise is fairly to be inferred, if we read the broad language in connection with other provisions of the act. In declaring the class of cases in which the decision of the collector is to be deemed final, it refers to duties chargeable upon imported merchandise, *including* dutiable costs and charges and as to all fees and exactions of whatever character, except duties on tonnage. If this broad language is segregated from its context, it might be broad enough to include all fees and exactions by the collector. But the collector of customs may exact fees in a class of cases which have no

relation whatever to the collection of duties on imports or have no connection with imported merchandise. This act was clearly not intended to cover such fees and exactions. What follows in the course of the paragraph indicates that the purpose was to restrict this language to cases which had relation to imported merchandise. The remedy providing the method of procedure, the transmission of papers from the customhouse, the effect of the determination by the board, and following upon this the appeal to this court provided for by the subsequent section all indicate a purpose to provide a remedy for persons paying fees, charges, and exactions other than duties in connection with imported merchandise.

The American Express Co.'s case, G. A. 6552 (T. D. 27962), in no way conflicts with the above views. In that case the costs and charges were exacted in connection with imported goods, although the goods had not been entered.

A case much more in point is Czarnecki's case, G. A. 3785 (T. D. 17851). In that case the collector required the payment of a sum for the expense of affixing internal-revenue stamps to unclaimed and abandoned cigarettes. It was held that while the action of the collector amounted to an exaction the board had no jurisdiction over the subject. Referring to section 14 of the act of June 10, 1890, the board said:

The words of section 14 of the act of June 10, 1890, under which this appeal is brought, "and as to all fees and exactions of whatever character," are general and comprehensive. But it is one of the plainest principles of statutory interpretation that the words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature had in view and that all words, if they be general, and not express and precise, are to be restricted to the fitness of the matter; that is, they must be understood as used in reference to the subject matter in the mind of the legislature, and strictly limited to it. (Endlich, secs. 73–86).

Now, the act of June 10, 1890, refers to the importation of merchandise and various incidents relating thereto, and this, and nothing else, was the subject matter in the mind of Congress. We think, therefore, that the fees and exactions which are made appealable by section 14 must relate to imported merchandise and must affect the rate and amount of duty or the costs and charges chargeable thereon.

We can not suppose that Congress intended to give an appeal to this board from a decision of the collector as to fees and exactions made by him in the multifarious duties imposed on him by law under the direction of the Secretary of the Treasury not in any manner relating to the importation of merchandise

This case was followed by the board in In re Kelly, G. A. 3786 (T. D. 17852). See also In re Baldwin, G. A. 4283 (T. D. 20129) and Palm's case, G. A. 5208 (T. D. 24002).

It is true that the board in the case of Ezquiaga, G. A. 4773 (T. D. 22507), took jurisdiction of a protest against exactions of light duties exacted by the collector of San Juan, P. R. While the question of jurisdiction seems not to have been much discussed, jurisdiction in such case was assumed.

The case of United States *v.* Hall Coal Co. (134 Fed., 1003) involved the question of whether the Board of General Appraisers had jurisdiction to determine whether dockage charges were dutiable as a portion of the costs of repairs of a vessel in a foreign port, such dockage charges having been made the subject of assessment by the collector. The court affirmed the jurisdiction, but rested the decision on the distinct ground that Congress had intended to vest the board with jurisdiction to review decisions of the collector as to all collections of duties which he might be legally authorized to impose upon imported merchandise. After quoting the language of section 14, the court adds:

\* \* \* The language just quoted, which is a part of section 14, considered in connection with section 3114, under which the duty was assessed, would seem to be sufficiently comprehensive to clothe the board with power and jurisdiction to review all duties on imports assessed by a collector,

and proceeds to distinguish the case from that of *In re* Fassett (142 U. S., 479), where the subject of the collector's assessment was not liable to duty, and where it was accordingly held that the collector's action was not open to review by the board.

We think the present case falls clearly within the reasoning of Czarnecki's case, *supra,* and we do not consider the Hall case an authority sustaining the claim of jurisdiction in this case.

It follows from the views expressed above that the decision of the board denying relief under this protest must be *affirmed,* but without prejudice to the right of the protestants to take any proceedings advised before the proper tribunal.