The **NATIONAL BONDED WAREHOUSE ASS'N, INC.**, et al., Plaintiffs,

v.

The **UNITED STATES**, et al., Defendants.

Court No. 87–02–00270.

United States Court of International Trade.

Dec. 23, 1987.

Sandler & Travis, Thomas G. Travis, Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civil Div., U.S. Dept. of Justice, Michael P. Maxwell, New York City, for defendants.

## OPINION

RESTANI, Judge:

Plaintiffs have filed suit under 28 U.S.C. § 1581(i) (1982) seeking to have regulations setting bonded warehouse annual fee rates for 1985 and 1986 declared invalid. The regulations governing audit and inspection of bonded warehouses were first promulgated in 1982. Defendants claim that the fees assessed in connection therewith could have been challenged by way of administrative protest under 19 U.S.C. § 1514 (1982 & Supp. III 1985) with subsequent judicial review of a denial of protest under 28 U.S.C. § 1581(a) (1982).

It has been repeatedly held by this court that if there is an adequate remedy under 28 U.S.C. § 1581(a), jurisdiction will not lie under 28 U.S.C. § 1581(i), the residual jurisdiction provision. "That plaintiff failed to utilize the adequate and effective procedure originally available to it under section 1581(a) does not render such remedial procedure manifestly inadequate." *Star Sales Distributing Corp. v. United States*, 10 CIT ——, 663 F.Supp. 1127, 1130 (1986).

The key to resolution of this dispute is 19 U.S.C. § 1514(a) which sets forth subject matter categories giving rise to decisions that may be protested, and thus determines what may be challenged under 28 U.S.C. § 1581(a). The third category of § 1514(a) reads: "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a)(3). The plain language of the statute would appear to include annual warehouse fees, but plaintiffs have cited two cases which appear to limit this language. They are *Puget Sound Freight Lines, et al. v. United States*, 36 CCPA 70, 173 F.2d 578 (1949) and *Atlantic Transport Co. v. United States*, 5 Cust.Ct.App. 373 (1914).

Apparently the particular language in § 1514(a)(3) which is at issue has remained virtually unchanged since the turn of the century. Congress is presumed to be aware of, and to adopt, judicial interpretations of a statute when it re-enacts that statute without change. *Lorillard v. Pons*, 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978). On the other hand, the statute is not structured in quite the way it was at the times of the two cases cited and the related jurisdictional scheme is much altered. None of the changes, however, appear to directly affect the language at issue and defendants have cited no legislative history specifically referencing any desire to overrule the two cited cases. At least for the sake of argument, the court will assume that Congress intended these judicial interpretations to apply despite the surrounding statutory changes.

In *Puget Sound* the challenged fees were assessed on vessels in connection with entry and clearances. The court relied in part for its interpretation of the scope of protestable matters on the jurisdiction of the Customs Court, 36 CCPA at 73–78, 173

F.2d at 580–84, which was more limited than is that of this court. The court states its opinion that "fees, exactions, or charges which bear no relation to the importation of merchandise and the rate of duty resulting from such classification are not, as contended by appellants, 'exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)' within the meaning of section 514 of the Tariff Act of 1930." 36 CCPA at 78, 173 F.2d at 584.

*Puget Sound* also discusses *Atlantic Transport* which involved fees for services of inspectors in supervising the loading of a vessel with merchandise on which drawback was claimed.[1] The court found no jurisdiction, stating "the purpose [of the statute] was to restrict this language to cases which had relation to imported merchandise." 5 Cust.Ct.App. at 376. Like the court in *Puget Sound*, the *Atlantic* court referred to the jurisdiction of the reviewing bodies in concluding that the purpose of the statutory scheme was "to provide a remedy for persons paying fees, charges, and exactions other than duties in connection with imported merchandise." *Id.* The *Atlantic* court viewed the charge as relating to export, noting that "importation is complete." 5 Cust.Ct.App. at 374.

In this case fees are charged warehouse owners in connection with supervision by customs officials of receipt of merchandise into bonded warehouses and withdrawal of imported merchandise from bonded warehouses. 19 U.S.C. §§ 1551 and 1646a (1982). Duties are not generally payable while the merchandise is in the warehouse. 19 U.S.C. § 1557(a) (1982). Thus, the annual warehouse fees, although they are not paid directly by importers, clearly "bear ... relation to the importation of merchandise," *Puget Sound*, 36 CCPA at 78, 173 F.2d at 584, and are paid "in connection

with imported merchandise," *Atlantic*, 5 Cust.Ct.App. at 376.[2]

As merchandise in bonded warehouses is in the importation process, it is not difficult to distinguish this case from *Atlantic*. The facts of *Puget Sound* are even more clearly distinguishable. As the lower court decision in *Puget Sound* spells out, the charges there were not related to the importation of merchandise. *Puget Sound Freight Lines, et al. v. United States*, 19 Cust.Ct. 70, 74 (1947). This court is faced, however, with language in both *Puget Sound* and *Atlantic* that in its broadest sense would seem to restrict the meaning of the words "charge or exaction of whatever character" in ways those courts could not have intended. The *Puget Sound* appellate court cites with approval the lower court's reasoning which drew a distinction between (1) disputes as to whether fees assessed by Customs on packed packages were for storage, disputes over charges in connection with inspection during unlading of vessels and disputes involving charges for cartage from a vessel; and (2) challenges to various clearance and entry fees on vessels. *Puget Sound*, 36 CCPA at 73, 173 F.2d at 580. The basis for the distinction apparently was that the former class of disputes involved charges made in connection with imported merchandise while the latter did not. *Id.* The fees at issue here seem very similar to fees for storing or sampling of packed packages or inspection fees incurred during unlading of vessels bearing imported merchandise. In addition, one of the problems facing the court in *Puget Sound* was the fact that the fees assessed were not within the jurisdiction of the Treasury Department when the relevant language first appeared in the statute. 36 CCPA at 76, 173 F.2d at 582–83.

The *Atlantic* court's emphasis on exportation and its seeming acceptance of cases

---

1. Drawback generally concerns the refund, upon exportation, of certain monies previously paid upon importation of merchandise, due to the use made of such merchandise. *See* 19 U.S.C. § 1313 (1982 & Supp. III 1985); 19 C.F.R. § 191.2(a) (1986). The drawback in *Atlantic Transport* involved "certain articles manufactured in the United States, and on which the exporter had filed claims for drawback of the

duty paid upon the imported materials entering into the manufacture of such articles." *Atlantic Transport*, T.D. 33,979, 25 Treas.Dec. 608, 609 (1913).

2. 19 U.S.C. § 1514(c)(1)(B) generally allows "any person paying any charge or exaction" to file a protest.

**1232**

which involve assessment of certain other fees in connection with imported goods (although the fees do not seem to be any more related to classification or rates of duty than the fees at issue here) render it limited support for plaintiff's position. *See Atlantic*, 5 Cust.Ct.App. at 376 (discussing *American Express Co.*, T.D. 27,962, 13 Treas.Dec. 286 (1907)).

The holdings of *Puget Sound* and *Atlantic* do not compel the court to accept plaintiffs' view. To the contrary, in order to interpret 19 U.S.C. § 1514(a) as plaintiffs wish, the court would have to extend *Puget Sound* and *Atlantic* beyond their holdings. Congress should be held to adopt extensions of judicial precedent that are contrary to plain language only if they are necessary to make sense of the statutory scheme. There is no limitation on the court's jurisdiction which requires the court to adopt plaintiffs' interpretation in order to harmonize the statutes nor does acceptance of the plain language create any other significant incongruities.

In the area of adjudication of disputes under the customs laws Congress has expressed a desire that a wide variety of disputes be resolved in an orderly manner via administrative protest. *See* 19 U.S.C. § 1514. As a result, substantial judicial and other governmental resources are preserved. The provisions of section 1514(a) should not be read narrowly so as to escape the system of review or to prevent reviewability. *Cf. United States v. Priority Products*, 793 F.2d 296, 299–300 (Fed.Cir.1986). Because validity, as well as implementation, of regulations is at issue, at first glance section 1581(a) may not appear to be a proper remedy. The protest mechanism, however, is available to resolve all types of legal and factual disputes. *See United States v. A.N. Deringer, Inc.*, 66 CCPA 50, 55–56, 593 F.2d 1015, 1020–21 (1979). Of course, interpretation of section 1514(a) so as to include challenges to annual fees appears more appropriate if one considers the types of disputes which might arise. For example, under the 1986 tiered annual fee

structure, one might put at issue a narrow factual question such as the number of entries made at a particular warehouse. *See* 50 Fed.Reg. 50032 (Dec. 6, 1985).

The language of section 1514(a) is broad enough to encompass questions involving annual warehouse fees. Furthermore, sound policy reasons reflected in the statutory scheme indicate section 1514(a) should not be excessively narrowed. The cases cited which interpret earlier statutes, do not limit section 1514(a) to the extent argued by plaintiffs.

As the annual fees at issue have already been assessed, time is not of the essence. Thus, the usual reason for finding section 1581(a) inadequate where it might otherwise apply, and for assuming jurisdiction under 28 U.S.C. § 1581(i), rather than 28 U.S.C. § 1581(a), is absent.

As no additional reason for finding section 1581(a) inadequate has been proffered, the court finds that it was an available remedy. An adequate remedy exists under section 1581(a) and therefore jurisdiction does not lie under section 1581(i).[3] Accordingly, the motion to dismiss is granted.

**3.** A companion suit, *White Rose Distributing Co., Inc. v. United States,* Court No. 87–02–00268, has been filed in which both parties concur that jurisdiction exists to challenge the annual warehouse fees under 28 U.S.C. § 1581(a).